UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

MARIO MARTINEZ BELTRAN,

          Defendant.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/2022

21 CR 473 (CM)

### DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

McMahon, J.:

Defendant Miguel Martínez Beltrán ("Martinez") has been charged in a one count indictment with illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and (b)(1).

Before the Court is Martinez's motion to dismiss the indictment, pursuant to Federal Rule of Criminal Procedure 12, on the grounds that the immigration court that purported to order his removal in April of 1999 lacked jurisdiction to do so. The Government opposes the motion.

### Background

*The Defendant's Initial Conviction & Deportation Proceeding*

The defendant is a native of Mexico (Decl. of Mario Martinez Beltran ("Defendant Decl.") ¶ 2.) In or about 1996, the defendant came to the United States when he was approximately seventeen years old. (*Id.* ¶¶ 2, 5, 6.) On or about March 20, 1999, the defendant was arrested and charged in New York state court with criminal possession of a firearm in the second degree on school grounds, in violation of New York Penal Law § 265.03, and criminal possession of a weapon (firearm) in the fourth degree, in violation of

1

New York Penal Law § 265.01. (RAP.) On March 25, 1999, the defendant pled guilty in New York Criminal Court to criminal possession of a weapon in the fourth degree, in violation of New York State Penal Law § 265.01(1) and was sentenced to 30 days in prison. (Decl. of S. Isaac Wheeler ("Wheeler Decl.") ¶ 4.)

While detained in state custody for the 1999 Conviction, the defendant was interviewed in Spanish by an officer with the Immigration and Naturalization Service ("INS"), who identified the defendant as an undocumented immigrant and lodged a "detainer" form with the warden of the "CIFM" facility on Rikers Island. (Wheeler Decl. ¶ 5, Ex C; Ex. D). On April 5, 1999, the INS officer prepared and signed the initial notice-to-appear ("NTA") that was served upon the defendant. (*See* Wheeler Decl. Ex. E.) Specifically, this initial NTA alleged that: (i) the defendant was not a citizen of the United States; (ii) the defendant was a native and citizen of Mexico; and (iii) the defendant entered the United States on an unknown date, at an unknown place, other than as designated by the Attorney General. (*Id.*) Accordingly, the defendant was charged with being subject to removal from the United States pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. (*Id.*) The initial NTA ordered the defendant "to appear before an immigration judge of the United States Department of Justice" at a time and place to be calendared at a later date with the notice to be sent by the Office of the Immigration Judge. (*Id.*)

After completing his state sentence for the 1999 Conviction, the defendant was transferred into INS custody and was served with a copy of the warrant of arrest, along with a form informing him that he would be detained pending removal proceedings and removal. (Wheeler Decl. Ex. F.) On April 9, 1999, a hearing notice (the "April 1999 Notice") was served on the defendant "c/o Custodial Officer," informing the defendant that his removal

proceeding would take place on April 12, 1999 at 8:30 a.m. at 201 Varick Street, Room 1140, New York, NY 10014. (Wheeler Decl. Ex. H.) The April 1999 Notice advised the defendant of his right to be represented at the removal proceeding. (*Id.*)

On April 12, 1999, the defendant appeared in person for a removal hearing before an immigration judge ("IJ"), which was conducted in English with the assistance of a Spanish interpreter. (*See* Wheeler Decl. Ex. I.) At the outset of the proceeding, the IJ advised the defendant of his right to be represented at the proceeding at no expense to himself or to represent himself. The defendant did not respond to the question but indicated that he did not wish to fight his case and wanted to be deported. (*Id.*) Thereafter, the IJ asked again whether the defendant wanted to proceed with the hearing without an attorney and waive his right to counsel. (*Id.*) The defendant answered "Yeah." (*Id.*) During the course of the hearing, the IJ offered on more than one occasion to adjourn the defendant's case to allow him more time to consider his decision or to seek other counsel. The defendant declined and elected to proceed with the hearing.

In response to the IJ's subsequent questions, the defendant confirmed that he had received on April 9 the requisite immigration forms, including the NTA and the charges against him. (*Id.*) The defendant then waived his right to postpone the hearing because he had received the April 9 NTA. (*Id.*) The IJ read the allegations against the defendant and the consequences if the allegations were found to be true. (*Id.*) The IJ outlined the defendant's rights if he contested the allegations, which the defendant acknowledged that he understood. (*Id.*) Thereafter, the IJ confirmed that the defendant was not a U.S. citizen and that he had crossed the U.S. border unlawfully. When the IJ then asked, "You understand you could be deported or removed for arriving in that fashion?" the defendant answered: "Yes." The IJ

advised the defendant of his right of voluntary removal in lieu of deportation. The IJ explained that if the defendant wanted to apply for this relief, the IJ would adjourn the defendant's case. The IJ then asked, "do you even have money to pay for your own transportation out of the United States?" To which the defendant said, "no" and proceeded to ask a question related to how long it would take to be sent back to Mexico. The IJ advised that he would be sent as soon as possible.

At the conclusion of the proceeding, the IJ informed the defendant of his decision to enter an order to remove the defendant back to Mexico. When asked by the IJ, the defendant confirmed that he did not wish to appeal this decision. Specifically, the following exchange occurred:

> IJ: Sir, I am going to enter an order, ordering that you be removed from the United States back to Mexico for the reasons that have been explained. Because you are being deported, you will have to wait at least ten years before you are eligible to apply to come back to the United States. There's no guarantee you'll ever be permitted to come back . . . . If you return illegally, you'll have to be deported. It's a different process. . . [U/I] because you are coming back unlawfully. Do you understand?
>
> Defendant: Yes.
>
> IJ: Knowing all those factors, sir, do you wish to accept my decision ordering that you be removed and deported back to Mexico as a final decision in your case or do you wish to appeal to a higher court?
>
> Defendant: U/I
>
> IJ: No Appeal
>
> Defendant: No
>
> IJ: That means that they will make arrangements to send you back to your country. [U/I] Is that what you wish?
>
> Defendant: Yes.

To be sure, at no point during the hearing did the judge identify any problem with the

putative NTA or state or suggest that the judge lacked jurisdiction to act in the removal case. (Wheeler Decl. ¶ 11). And Martinez—who says he was not able to read the English-language NTA form—claims he was not aware of any such defense to removal at the time of his immigration case. (Ex. A ¶ 12). Defendant claims in his current motion that, had he known he had such defenses, he would have pressed this issue on appeal, because his goal was to remain in the United States to continue to earn money for as long as possible. *Id.* ¶ 13. He also says that he was not aware that he had judicial remedies outside the removal process. *Id.* ¶ 14.

At the conclusion of the hearing, a final order of removal was entered (the "April 1999 Order of Removal"). (Wheeler Decl. K.) On or about April 30, 1999, the defendant was removed to Mexico.

*Defendant Reenters U.S.— Convicted of Robbery—Deported Once More—Reenters U.S. Yet Again— Rearrested for Criminal Possession of a Weapon—Indicted for Illegal Reentry*

On or about September 25, 2000, the defendant re-entered the United States without authorization. (Gov't Ex. A.) On August 14, 2003, the defendant was convicted in New York County Criminal Court of robbery in the third degree, in violation of New York State Penal Law § 160.05 (the "2003 Conviction"). On January 13, 2004, the defendant was ordered removed to Mexico based on the April 1999 Order of Removal. On September 28, 2004, the defendant was removed to Mexico for the second time.

Sometime following the 2004 removal, the defendant returned yet again to the United States. Continuing the pattern of illegal entries and arrests, defendant was arrested in New York County on October 19, 2019 for, *inter alia*, criminal possession of a weapon in the second degree, in violation of New York State Penal Law § 265.03. And on July 26, 2021, he was federally indicted for illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1).

### **Defendant's Motion**

Martinez moves to dismiss the present illegal reentry indictment alleging that: (i) his April 1999 immigration proceeding was void, in that the immigration court lacked jurisdiction because the initial NTA did not include the address of the immigration court where the initial NTA was filed or the date or time of the hearing; (ii) the collateral attack requirements of 8 U.S.C. § 1326(d) do not apply to him because there is no removal order to attack collaterally; and (iii) assuming the defendant is required to satisfy the requirements of Section 1326(d), he has done so.

The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights. *United States v. De La Pava*, 268 F.3d 157, 165 (2d. Cir. 2001). Under certain limited circumstances, Section 1326(d) allows a defendant to mount a collateral attack on a deportation upon which his illegal reentry charge is based. Section 1326(d) codifies the Supreme Court's holding in *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987) (holding that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review"). *See United States v. Lopez*, 445 F.3d 90, 94 (2d Cir. 2006) (explaining that Section 1326(d) codified *Mendoza-Lopez*).

Pursuant to Section 1326(d), a defendant may attack his prior deportation if the defendant carries his burden of establishing that:

> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; *and*

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). As the Second Circuit has explained, and the Supreme Court has recently re-affirmed, "[t]he requirements are conjunctive, and thus [a defendant] must establish all three in order to succeed in his challenge to his removal order." *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002); *see also United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021). The purpose of collateral review is to "determine whether the proceedings were so fundamentally unfair that they resulted in a deportation that might not otherwise have occurred." *Fernandez-Antonia*, 278 F.3d at 159. In short, to prevail on a collateral attack, the defendant "must show that, absent the procedural errors, he would not have been removed." *Id.*

*Failure to Include Date, Time and Place in NTA*

The Second Circuit's decision in *Banegas-Gomez v. Barr*, 922 F.3d 101, 112 (2d Cir. 2019), forecloses any argument that the failure to include a hearing time or place, in the initial NTA rendered the proceedings fundamentally unfair because subsequent notice of hearing containing that information was provided to the defendant before his hearing date.

Title 8 U.S.C. § 1229 a authorizes immigration judges to "conduct proceedings for deciding the inadmissibility or deportability of an alien." The preceding section, 8 U.S.C. § 1229, entitled "Initiation of removal proceedings," describes certain procedures. Subsection (a), entitled "Notice to Appear," lists the information that must be provided to aliens subject to removal proceedings by written notice, including the nature of the proceedings, the legal authority for the proceedings, the alien's alleged conduct, the charges brought against the alien, and "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1). As the Second Circuit has noted, "The statutory text does not, however, explain

7

when or how jurisdiction vests with the immigration judge—or, more specifically, denote which of the several requirements for NTAs listed in § 1229(a)(1) are jurisdictional." *Banegas Gomez*, 922 F.3d at 110 (quoting *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 313 (6th Cir. 2018)). Instead, *when* jurisdiction vests, or when proceedings commence, is prescribed by a regulation, 8 C.F.R. § 1003.14(a), which provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." In turn, 8 C.F.R. § 1003.13 defines "charging document" to include, among others, a "Notice to Appear."

Several different regulations specify what information must be included in the Notice to Appear. For example, 8 C.F.R. § 1003.14 provides that the "charging document must include a certificate showing service on the opposing party ... which indicates the Immigration Court in which the charging document is filed." Section 1003.15(b) provides a list of information that must be included, including, "The address of the Immigration Court where the Service will file the ... Notice to Appear." Section 1003.18 provides that "the Service shall provide in the Notice to Appear, the *time, place and date* of the initial removal hearing, *where practicable*." *Id.* (emphasis added). It further provides that "[i]f that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of the hearing."

That is exactly what occurred here and in *Banegas Gomez*. The initial NTA did not include the time, place, and date of the hearing, but that information was subsequently provided to the alien by the Immigration Court. Thus, consistent with the plain text of 8 C.F.R. § 1003.18, the Second Circuit in *Banegas Gomez* held that the deportation order is not

8

void merely because an NTA omits the hearing time or date. 922 F.3d at 110, 112 ("We conclude that an NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien."); *see also United States v. Taveras*, 504 F. Supp. 3d, 272, 281 (S.D.N.Y. 2020) (rejecting defendant's arguments that the immigration court that issued a deportation order against the defendant lacked jurisdiction because the initial NTA failed to include time and place of the removal hearing or the address of the court where the NTA was filed, where a subsequent notice including the time and place of the removal hearing was sent to the defendant); *United States v. Dominguez-Bido*, 20 Cr. 34 (PAC), 2021 WL 1026386, at *7 (S.D.N.Y. Mar. 27, 2021) (same); *United States v. Suquilanda*, 21 Cr. 263 (VM), 2021 WL 4895956, at *2 (Oct. 20, 2021) ("[T]o the extent Suquilanda argues no jurisdiction vested in the Immigration Court because his NTA did not contain time and date information regarding his initial hearing . . . the Second Circuit has explicitly foreclosed that argument and this Court therefore rejects it as well").

The *Banegas Gomez* court joined other circuit courts of appeal reaching the same conclusion that the IJ's deportation order is valid even where an initial NTA lacks date, time, and place information, as long as that information is provided to the alien in advance of the proceeding, in conformity with 8 C.F.R. § 1003.18. *See Goncalves Pontes v. Barr*, 938 F.3d 1, 6–7 (1st Cir. 2019); *Nkomo v. Barr.*, 930 F.3d 129, 133 (3d Cir. 2019); *United States v. Cortez*, 930 F.3d 350, 363 (4th Cir. 2019); *Pierre-Paul v. Barr*, 930 F.3d 684, 689–90 (5th Cir. 2019); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314–15 (6th Cir. 2018); *Ortiz-Santiago*, 924 F.3d at 963; *Ali v. Barr*, 924 F.3d 983, 986 (8th Cir. 2019); *Karingithi v.*

*Whitaker*, 913 F.3d at 1160; *Soriano-Mendosa v. Barr*, 768 F. App'x 796, at 802 (10th Cir. 2019).

*The Missing Address*

Defendant argues that, even if the Court were to determine that *Banegas Gomez* dooms his argument that the defective NTA failed to confer jurisdiction on the immigration court, "the absence of an address" where the hearing will be held means that the NTA fails to confer jurisdiction. Defendant argues that, unlike § 1003.18(b), § 1003.15(b)(6) does not provide for a curative notice when it was not "practicable" to include "the address" on the original NTA.

That issue was not resolved in *Banegas Gomez* because Banegas Gomez's NTA included the court's address. "But the logic of [*Banegas Gomez*]—that a later notice sent to the alien which, as authorized by § 1003.18(b), supplies the missing logistical data point regarding the upcoming hearing is adequate to vest jurisdiction in the immigration court— equally applies." *See United States v. Taveras*, 504 F. Supp. 3d 272, 282 (PAE) (S.D.N.Y. 2020). As Judge Paul A. Engelmayer reasoned in *Taveras*:

> Critically, § 1003.18(b) twice addresses the hearing's "place" in tandem with its time and date, stating that the NTA is to state "the *time, place and date* of the initial removal hearing, where practicable," but that, if that information is not supplied there, "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the *time, place, and date* of hearing." *Id.* (emphasis added). Section 1003.18(b)'s explicit statement that an NTA's omission of "place" information can thus be cured would be nullified were § 1003.15(b)(6)'s silence as to the remedy for failure to include the immigration court's address on the initial NTA held to mean that such failure incurably prevented jurisdiction from vesting.

*Id.*

In the present case, the Immigration Court served Martinez with a document "Notice of

10

Hearing in Removal Proceedings." This document supplied the missing information. It notified Martinez of the place (date and time) of his removal hearing, stating that the hearing would be held at an "Immigration Court" on "April 12, 1999, at 8:30 a.m., at 201 Varick Street, RM 1140, New York, NY 10014." This was served on defendant April 9, 1999. At the appointed date and time, Martinez was produced at Varick Street for the hearing.

Defendant cites *United States v. Benitez-Dominguez*, 440 F. Supp. 3d 202, 211 (E.D.N.Y. 2020), *appeal withdrawn*, No. 20-1050, 2020 WL 3422359 (2d Cir. Apr. 9, 2020), for the proposition that the NTA's omission of the hearing address is dispositive as to the court's jurisdiction. In that case, Judge Garaufis dismissed an indictment charging illegal reentry because the NTA had not included the time, date, or address of the removal hearing. However, the alien in *Benitez-Dominguez* was *never* served with a qualifying notice of hearing remedying these deficits. Judge Garaufis held that a later notice that the alien had received, which contained the missing information, did not qualify as a notice of hearing, because it was a "notice of change of address for immigration court," not a notice of hearing. Title 8 U.S.C. § 1229(a)(2)(A), requires such a notice to be sent to the alien "in the case of any change or postponement in the time and place of such proceedings." *Benitez-Dominguez*, 440 F. Supp. 3d at 211. Judge Garaufis held that a postponement notice—unlike the notice held effective in *Banegas Gomez*—could not cure the deficient NTA because it "presumes the existence of valid NTA." *Id.* Judge Garaufis did, however, recognize that, had a second notice of hearing been properly served on the alien, it, under *Banegas Gomez*, would have cured the defect in the initial NTA. *See Benitez-Dominguez*, 440 F. Supp. 3d at 210 ("Therefore, a subsequent notice of hearing was required, and, *because that subsequent notice was never provided*, the immigration court did not have the jurisdiction to order Mr. Benitez-

11

Dominguez's removal." (emphasis added)).

*Benitez-Dominguez* is easily distinguished here. Martinez, unlike Benitez-Dominguez, indisputably received a second notice of hearing, which specified the date, time, and location of his removal hearing.

Judge Garaufis did go on in dicta to state that, even if a later notice of hearing had been served so as to cure the absence of date and time information in the NTA, such a notice might have been incapable of curing the absence of an "address" in the NTA, which in his view would have deprived the immigration court of jurisdiction. Judge Garaufis reason for coming to this conclusion was that, unlike 8 C.F.R. § 1003.18(b), 8 C.F.R. § 1003.15(b) does not expressly provide for a curative notice—it is silent on the point. *See Benitez-Dominguez*, 440 F. Supp. 3d at 210 ("It strains credulity, then, to argue that compliance with § 1003.18(b) is necessary to vest jurisdiction, but compliance with § 1003.15(b) is not."). For the reason set out above, the Court is not persuaded by Judge Garaufis reasoning.

Because defects in the defendant's initial NTA could be and in fact were cured prior to his hearing, Immigration Court was vested with jurisdiction and its order is not void.

*The Requirements of 8 U.S.C. § 1326(d)*

Title 8 U.S.C. § 1326(d) requires that an immigrant do three things in order to mount a collateral attack on a deportation order: (1) exhaust any administrative remedies that may have been available to seek relief against his removal order; (2) establish that the deportation proceeding at which the order was issued improperly deprived him of an opportunity for judicial review; and (3) establish that the entry of the removal order was fundamentally unfair.

Martinez argues that § 1326(d) does not apply here because "there simply is no order to collaterally attack." (Mot. at 28-29). Courts have routinely rejected this argument. *See, e.g.*,

*Taveras*, 504 F. Supp. 3d at 287 ("[A]n alien challenging a deportation order under § 1326(a) based on a claim that jurisdiction was lacking to issue that order must satisfy § 1326(d)). "Section 1326(d) does not carve out an exception for jurisdictional challenges. *Dominguez-Bido*, 2021 WL 1026386, at *3. "Rather, it is clear as it is categorical that 'an alien may not challenge the validity of the deportation order' unless [Section 1326(d)] requirements are met." *Id*.

Martinez has failed to satisfy the administrative remedy-exhaustion prong and the judicial review prong for the same reason: because he knowingly and intelligently waived his right to appeal. Throughout the proceeding, Martinez was assisted by a Spanish interpreter. He showed no lack of understanding the IJ's questions and statements. During the hearing, after concluding that Martinez was subject to mandatory deportation, the IJ informed Martinez about voluntary departure and the consequences of a final order of removal—that the defendant would be prohibited from reentering the United States for at least ten years, could be subject to prosecution if he reentered unlawfully, and that there was no guarantee he would ever be able to return. The defendant confirmed that he understood these consequences. The IJ then asked if "knowing all those factors, sir, do you wish to accept my decision ordering that you be removed and deported back to Mexico as a final decision in your case or do you wish to appeal to a higher court?" The defendant confirmed that he did not want to appeal the decision and wanted to be sent back to Mexico. Under these circumstances, and with no indication whatever that the defendant was incapable of understanding the proceedings, the defendant's waiver of appeal was knowing and intelligent. *See Taveras*, 504 F. Supp. 3d at 287; *Dominguez-Bido*, 2021 WL 1026386, at *4.

As to § 1326(d) third and final prong, Martinez would have had to show that the removal

13

proceeding suffered from a "fundamental error" *and* that he was prejudiced by the error. *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002). The sole error in the removal proceeding that Martinez alleges—the defects in the initial NTA—was cured by the time of the removal hearing. Martinez does not identify any other impediment to his removal, such as disputing his firearm conviction. As such, he has failed to satisfy the fundamental unfairness prong of § 1326(d).

Accordingly, Martinez has failed to establish the three requirements that would allow him to challenge the validity of the deportation order under § 1326(d).

The motion to dismiss the Indictment is denied.

Dated: March 16, 2022

_____
District Court Judge